[No. 2,939.]

## PETER JOHNSON v. P. J. WHITE.

PURCHASE OF PERSONAL PROPERTY.—If one party negotiates the purchase of personal property, and another furnishes him with the money to pay for it, and for his security takes the bill of sale from the seller in his name, and takes possession, and it is agreed that the property shall belong to the negotiator when he pays the money, the legal title to the property is vested in the person who furnishes the money, and to whom the bill of sale was made.

IDEM.—The same would be the result if the person to whom the bill of sale is given, instead of loaning the money, obtained it by signing with the negotiator a joint note to a bank, or by indorsing a note given by the negotiator to the bank, provided the note is afterwards paid by him.

IDEM.—In such case the person to whom the bill of sale is given has a good title to the property as against the attaching creditors of the negotiator.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The drug store was purchased from Dr. Reynolds, October 26th, 1869. March 12th, 1870, Dr. Mayon was indebted to McDonald & Co., and they commenced an action against him, and procured an attachment to issue, which was placed in the hands of the defendant, who was Sheriff, and he attached the drugs. The plaintiff commenced this action against the Sheriff to recover the goods.

It appeared from the testimony that the plaintiff paid the note mentioned in the opinion, and then tore it up.

The defendant asked the Court to give the following instruction to the jury, which is spoken of in the opinion as the third:

"If the jury believe, from the evidence, that Johnson (the plaintiff) tore up the note given to the City Bank, after the commencement of this suit, and knowing, at the time, that the note would be important as evidence in this cause, then you are warranted in presuming that the note was of the character contended for by the defendant—that is, that

Mayon was the maker of the note, and Johnson the indorser."

The Court refused to give the instruction, to which the counsel for defendant excepted.

The plaintiff recovered judgment, and the defendant appealed from an order denying him a new trial.

The other facts are stated in the opinion.

*George W. Tyler,* and *F. F. Taylor,* for Appellant.

The Court erred in refusing to instruct the jury that if Johnson tore up the note after the commencement of this suit, knowing it to be important evidence in this case, that the jury were warranted in presuming that the note was of the character contended for by defendant; that is, that Mayon was the maker, and Johnson the indorser. (*Bagley* v. *McMickle,* 9 Cal. 430; Burrill on Cir. Ev. 419; 3 Greenl. Ev., Sec. 34; 1 Greenl. Ev., Sec. 34, and notes.)

*Quint & Hardy,* for Respondent.

Johnson paid the purchase money and took possession of the property, with the understanding and agreement, that the property was to become Mayon's when he (Johnson) was reimbursed or repaid the two thousand five hundred dollars advanced. At most, as between Johnson and Mayon, it was only a conditional sale or agreement that the property should become Mayon's upon repayment of the purchase money. Sales may be absolute or conditional; and when conditional, the title does not pass until the performance of the condition. (Hilliard on Sales, p. 22; *Hussey* v. *Thornton,* 4 Mass. 405; *Marston* v. *Baldwin,* 17 id. 606; *Barrett* v. *Pritchard,* 2 Pick. 512; *Whitwell* v. *Vincent,* 4 id. 449; *Hill* v. *Freeman,* 3 Cush. 257; *Herring* v. *Hoppack,* 3 Duer, 20.)

By the Court, RHODES, J.:

The evidence shows that Dr. Mayon negotiated the purchase of the drug store from Dr. Reynolds; that by agreement among the parties, the bill of sale was taken in the plaintiff's name, to secure the payment by Mayon to him of the amount advanced by him to effect the purchase; and that the possession of the store was delivered to the plaintiff, and the evidence tends to show that the plaintiff placed T. C. Mayon, the son of Dr. Mayon, in charge of the store. That transaction placed the legal title to the drug store in the plaintiff.

There is evidence tending to show that there was an agreement between Dr. Mayon and the plaintiff that he (Dr. Mayon) would pay the plaintiff the sum which he had paid as the purchase money, with interest, and that then the drug store should be turned over to and become the property of Dr. Mayon. That agreement would not operate as a transfer of the title to Dr. Mayon, until the money was paid by him. There is no evidence that the money was paid.

Upon the issue as to whether at the time of the purchase of the drug store, the purchase money was loaned by the plaintiff to Dr. Mayon, the evidence is conflicting; but if it were in truth loaned to him, that fact would not vary the effect of the bill of sale, and delivery of possession of the drug store; for, although Dr. Mayon, or those claiming under him, may insist that the bill of sale was executed as security for the payment of the money advanced by the plaintiff, still the bill of sale transferred the title to the plaintiff, and it would not pass to Dr. Mayon until he paid the money loaned to him by the plaintiff.

The evidence leaves no room for doubt that the purchase money was agreed to be, and was, furnished by the plaintiff; that it was procured by the plaintiff from the City Bank; that Dr. Mayon agreed to repay that sum; and that the bill

of sale was executed to the plaintiff to secure its payment. The question whether the note to the bank was made by the plaintiff and Dr. Mayon jointly, or by Mayon with the plaintiff as an indorser, is immaterial; for, if it was made in the latter form, it would not so operate as to change the legal effect of the bill of sale. The Court, therefore, did not err in refusing the defendant's third instruction. Conceding that the proposition contained in the proposed instruction—that because of the destruction of the note by the plaintiffs, it will be presumed that it was made in the form contended by the defendants, which is, that Dr. Mayon was the maker and the plaintiff the indorser—was correct; still the failure to give it was not erroneous, for, as we have seen, the question of the effect of the bill of sale is not dependent on the form of the note. If the bill of sale was intended as a mortgage, the legal title to the drug store passed to the plaintiff without regard to the form of the note; and hence the question as to the form of the note was immaterial.

The other questions presented on the motion for a new trial, do not require any further consideration.

Order affirmed.


WALLACE, C. J., dissenting:

It was a material question at the trial as to whether the drug store sold by Reynolds was sold to Johnson or to Mayon. One of the circumstances relied upon by the defendant, to show that the sale was in fact made to Mayon, was that the purchase money was obtained from the bank, and was so obtained upon a promissory note of which Mayon was the maker and Johnson was the indorser. Mayon swore that his recollection was that he made the note and Johnson indorsed it. It appears that the note was taken up by Johnson some ten days after this action was brought, and was

then torn up by him—and by this means it became impossible to produce it at the trial. Under these circumstances, the Court refused to instruct the jury that if they believed that Johnson tore up the note after the commencement of the suit, he knowing at the time that the note would be important evidence in this case, then they would be warranted in presuming that it was a note of which Johnson was the indorser and Mayon the maker, and in this refusal I think there was error. It was certainly the destruction by the plaintiff of a piece of evidence of much importance in determining whether he was the purchaser of the drug store or not; for, in my opinion, the circumstance that the bill of sale had been taken in the name of Johnson was by no means conclusive of the fact of a purchase made by him; if the purchase was made by Mayon, and the purchase money was furnished by him, the title would vest in him in favor of his creditors, even though the bill of sale ran upon its face to Johnson.

For these reasons, I think the judgment ought to be reversed, and the cause remanded for a new trial.